IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LATONIA LAKE O/B/O, | ) | CASE NO. 4:08CV723 |
| EARNEST CROOM, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | BENITA Y. PEARSON |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

This is an action for judicial review of the final decision of the Commissioner of the Social Security Administration. The matter was referred to this Court for the submission of a report and recommendation denying Supplemental Security Income to Plaintiff Latonia Lake on behalf of her minor son, Earnest Croom. Finding that the decision denying benefits is based upon proper legal standards and supported by substantial evidence, this Court recommends that the Social Security Administration's final decision be affirmed.

1

I. **Overview**

Earnest Croom was two years old at the time of the hearing before the ALJ. Earnest's blood tests showed an elevated level of lead, indicating lead poisoning. Earnest's mother, Latonia Lake ("Ms. Lake"), sought Supplemental Security Income ("SSI") on behalf of her son alleging that Earnest had temper tantrums, withdrew, did not speak in full sentences, and had difficulty identifying objects he sees. At the time of the hearing, Earnest's only "medication" was a daily multi-vitamin enriched with iron. Based upon the record now before the Court, the Social Security Administration ("Agency") denied benefits.

As explained in detail below, the Commissioner has adopted a three-step test for determining whether a child, like Earnest, is disabled and entitled to SSI. In order to be found disabled, at the end of this three-step analysis, the ALJ must minimally find the child to have "marked" limitations in at least two of six domains or an "extreme" limitation in one domain. In this case, the ALJ found that Earnest had "marked" limitation in only one domain. His mother believes the evidence also supports "marked" limitation in a second domain – attending and completing tasks.

The crux of the matter before the Court, therefore, is whether substantial evidence exists to support the ALJ's finding that Earnest did not show marked limitation in the domain of attending and continuing tasks. Neither party contests the ALJ's finding of a marked limitation in the domain of acquiring and using information.

After reviewing the administrative record as a whole, including the medical records, other evidence presented, all relevant testimony, and the legal standards applied, this Court

2

finds that the ALJ relied upon the correct legal standards and reached a decision supported by substantial evidence.

### II. Procedural History

Ms. Lake applied for SSI on behalf of Earnest on February 28, 2005.  The Agency initially denied benefits on June 23, 2005 and again denied benefits upon reconsideration on October 5, 2005.  Ms. Lake requested an administrative hearing, which was held before an ALJ on October 16, 2006.  On December 7, 2006, the ALJ issued a finding that Earnest was not disabled as defined by the Agency's regulations.  Ms. Lake filed a request for review of the ALJ's decision on December 8, 2006, which was declined on February 5, 2008.  Therefore, the decision of the ALJ, dated December 7, 2006, became the final decision of the Commissioner.

Ms. Lake then timely filed a complaint with this Court alleging that the ALJ's finding that Earnest did not have a marked limitation in the domain of attending and completing tasks was not supported by substantial evidence.  Specifically, Ms. Lake presented the following issue for the Court's consideration:

> Whether substantial evidence supports the Commissioner's decision that Plaintiff's impairment does not functionally equal a listing when the evidence demonstrates that Plaintiff has marked limitations in two domains of functioning.

ECF No. 12 at 1.

### III. Law and Analysis

**A. Judicial Review of a Final Agency Decision**

Judicial review of the ALJ's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs.,* 889 F. 2d

679, 681 (6th Cir. 1989) (citing Richardson v. Perales, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994). The ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. See Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999). Furthermore, judicial review of the ALJ's decision must be based on the record as a whole. Heston v. Comm'r of Soc. Sec., 245 f.3d 528, 535 (6th Cir. 2001). The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ. Id. The Court must review the findings of the ALJ consistent with the above deferential standards.

### B. Determination of Disability or Non-Disability in a Minor

An individual under the age of eighteen will be considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382(c)(3)(I); 20 C.F.R. §§ 416.906, 416.911(b). The regulations prescribe a three-step sequential evaluation process. See 20 C.F.R. § 416.924(a). At Step One, a child will be found "not disabled" if he is engaging in substantial gainful activity. See 20 C.F.R. § 416.924 (b). At Step Two, a child will be found "not disabled" if he does not have an impairment or combination of impairments that is severe, i.e., impairments that cause no more than minimal functional limitations. See 20 C.F.R. § 416.924(c). At Step Three, a child will be found "disabled" if he has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See 20 C.F.R. § 416.926a(d).

To determine whether a child's impairment(s) functionally equals the listing at Step Three, the ALJ assesses the functional limitations caused by the impairment(s) by considering how a child functions in the following six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926(a)(b)(1)(I)-(vi); *see* also 20 C.F.R. § 416. 926a(a).  If a child's impairments result in "marked" limitations in two domains, or an "extreme" limitation in one domain and certain durational requirements are met, the impairment(s) functionally equal the listings and the child will be found disabled.[1]  *See* 20 C.F.R. § 416. 926a(d).

With regard to Step One, the ALJ determined that at the time of his decision, Earnest was two years old and was not engaged in substantial gainful activity.  With regard to Step Two, the ALJ determined that Earnest's impairment of lead poisoning was indeed severe.  The ALJ's finding at Step Two were not contested by either party.  The dispute arose at Step Three.  Ms. Lake seeks relief from the ALJ's finding in Step Three that Earnest did not demonstrate a marked limitation in at least two domains.

The Agency defines a marked limitation is defined as follows:

---

[1] Because Earnest did not meet the minimal number of domains with marked or extreme limitation, the durational requirements did not become an issue.

5

> (2) *Marked limitation*. (I) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."  It is the equivalent of the functioning we would expect  to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416. 926a(e)(2)(I).

In the instant case, the ALJ found that Earnest demonstrated a marked limitation in only one domain – acquiring and using information – and had a less than marked or no limitation in all other domains.  Ms. Lake specifically complains that Earnest also had marked limitation in the domain of attending and completing tasks.  And, the ALJ, she contends, failed to make that finding because he relied solely on the testimony of the Agency's medical expert ("ME"), Dr. Selig Strassman, in reaching his decision.  The record disproves that contention.  In reaching his decision, the ALJ relied upon the opinions of several medical care providers, including an Agency reviewing physician, a doctor at Tod Children's Hospital, in addition to the ME.  The ALJ also relied upon a non-medical evaluation completed by Earnest's father.

At the hearing the ME testified that although Earnest's blood lead levels were outside the normal range, Earnest's lead level of 14.9 was in the "lowest abnormal" range.  (Tr. 178.)  The ME also testified that symptoms of lead poisoning "can be irritability, delayed learning, and other physical findings."  (Tr. 179.)  He testified that Earnest's irritability, however, was not a symptom attributable to lead poisoning, but was "normal for the age."  (Tr. 179.)  Earnest was approximately two years old, a toddler.

6

The ME further testified that children with high lead levels are generally treated with drugs known as chelating agents.  Upon review of the record, the ME testified that he could not find evidence of Earnest having received chelating agents, or that a physician considered prescribing such drugs.  (Tr. 180.)   Ms. Lake confirmed that Earnest's only medication was a daily vitamin fortified with iron.  (Tr.179.)   These facts, coupled with the absence of common symptoms of lead poisoning, led the ME to conclude that Earnest did not possess a severe impairment due to lead poisoning.

With respect to his irritability, particularly Earnest's temper tantrums, Dr. John Mormol, a reviewing physician for the Agency, indicated that there was no medically determinable impairment to explain the tantrums, nor were there any other signs of physical impairment. (Tr. 115.)  This finding concurred with the opinion of treating physician Dr. Yocum at Tod Children's Hospital, who indicated that Earnest's temper tantrums were normal behavior for a child of his young age.  (Tr. 122.)   All other aspects of Dr. Yocum's physical exam yielded normal results.   (Tr. 122.)

In reaching his conclusions, the ALJ rejected part of the ME's ultimate conclusion and found that Earnest's lead poisoning constituted a *severe* rather than marked impairment, as suggested by the ME.   The ALJ's disagreement with the ME's opinion (in favor of Earnest) refutes Ms. Lake's argument that the ALJ relied solely on the opinion of the ME in making his unfavorable decision.  Had the ALJ agreed with the ME (by finding the lead poisoning to be marked impairment instead of severe), the ALJ would not have progressed to Step Three, the analysis of functioning in the six domains.

Ms. Lake also claims that the ALJ selectively reviewed the record, ignoring pertinent information, which shows that Earnest cannot complete tasks self-sufficiently.  Ms. Lake relies on an evaluation completed by Earnest's father to advance this argument.  This evaluation indicated that Earnest was not able to brush his teeth without assistance or unbutton his own shirt among other things.  (Tr. 160.)  However, in averring that these shortcomings indicate a marked limitation in the domain of attending and completing tasks, Ms. Lake apparently ignored the other aspects of the evaluation that suggested that Earnest was indeed capable of completing some tasks self-sufficiently.  For example, Earnest's capabilities included:  using a fork to serve himself food, maintaining regular bladder control and using the bathroom without assistance.  (Tr. 160.)  This evidence suggests that Earnest may not have been able to complete *all* tasks self-sufficiently, but was at least able to perform some basic functions on his own.

Ms. Lake contends that an Evaluation Team Report completed by Earnest's school psychologist indicated that Earnest displayed some difficulty with language and gross motor activities. (Tr. 163.)  This same evaluation, however, also indicated that some of Earnest's difficulty with motor tasks could be due to his young age and that he played appropriately with toys in the room, although he did become possessive of preferred toys, a trait not atypical of toddlers.

According to the regulations, a child of Earnest's age should be able to "attend to things that interest [him] and have adequate attention to complete some tasks by [him]self. . . demonstrate sustained attention, such as when looking at picture books [and] listening to stories…"  20 C.F.R. § 416.926a(h)(2)(ii). The evaluation performed by Earnest's school psychologist indicated that "at times Earnest was difficult to engage and his focus quickly

8

shifted from one activity to another." (Tr. 163.) However, the aforementioned evaluation completed by Earnest's father demonstrated that Earnest could complete some tasks by himself, such as dressing and undressing himself without supervision. (Tr. 160.) Earnest's ability to play appropriately with toys in the room suggested his ability to demonstrate sustained attention to activities that interested him. Also, Ms. Lake testified that Earnest was able to sit and listen while she read books to him. (Tr. 173.)

### IV. Conclusion and Recommendation

This Court finds substantial evidence exists to support the ALJ's finding that Earnest Croom did not demonstrate marked limitation in at least two domains of functioning. Specifically, Earnest did not demonstrate marked limitation in the domain of attending and completing tasks and thus is not disabled and eligible for benefits. Moreover, the record reveals that the ALJ reached his final denial decision in accordance with correct legal standards and that the decision is supported by substantial evidence.

For the reasons stated above, this Court recommends that the final decision of the Commissioner denying benefits be affirmed and that this referral be terminated.

Dated: February 05, 2009              /s/Benita Y. Pearson
                                      Benita Y. Pearson
                                      United States Magistrate Judge

### OBJECTIONS

Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time

9

waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).